IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOMINICK N. CETANI and DONNA M. CETANI, <br>    Plaintiffs <br><br> v. <br><br> HELAINE GOLDMAN, SCOTT GOLDMAN, COLE PEFFER, AMBER PEFFER, CRESSON POINT PROPERTIES, and JOHN DOES 1 through 5, <br>    Defendants | 3:15cv1146 <br><br> (Judge Munley) |

## **MEMORANDUM**

  The plaintiffs sold a manufactured home, located within Defendant Cresson Point Properties, LLC's trailer park, to Defendants Helaine and Scott Goldman, with plaintiffs providing financing for the sale themselves. Plaintiffs brought the instant suit after the Goldmans defaulted on the loan and conveyed the home to Cresson Point Properties or its owners, Defendants Cole and Amber Peffer. Cresson Point Properties and the Peffers urge the court to dismiss all claims against them, arguing that plaintiff has failed to allege any grounds upon which relief could be granted. For the reasons explained below, we will grant in part and deny in part defendants' motion.

**Background**

  This case arises from the sale of a manufactured home. Plaintiffs Dominic and Donna Cetani (hereinafter "plaintiffs") owned a manufactured

home located in Saylorsburg, Monroe County, Pennsylvania. (Doc. 9, Am. Compl. (hereinafter "Am. Compl.") ¶ 14). The home resided within Blue Mountain Village, a trailer park owned by Defendant Crescent Point Properties, LLC, which in turn is owned by Defendants Amber and Cole Peffer (collectively "the Peffer Defendants" or "defendants"). (Id. ¶¶ 7-8, 16). The plaintiffs leased from the Peffer Defendants the plot of land upon which the home sat.[1] (Id. ¶¶ 8, 16-17).

Plaintiffs sold the home to Defendants Helaine and Scott Goldman (hereinafter the "Goldman Defendants") on May 31, 2013. (Id. ¶ 16). The agreement between plaintiffs and the Goldman Defendants called for a sale price of $80,000, which the plaintiffs advanced and the Goldman Defendants agreed to repay, with interest, in 120 monthly installments. (Id. ¶¶ 19, 21). Plaintiffs also advanced a down-payment of $5,000, which Defendant Cresson Point Properties required for a one-year property fee, and which the Goldman Defendants agreed to pay back within one year. (Id. ¶¶ 22-23). To effectuate the sale, Defendant Helaine Goldman executed a promissory note dated May 31, 2013 in the amount of $85,000. (Id. ¶¶ 19, 23).

---

[1] Plaintiff does not explicitly plead the lessor/lessee relationship between the plaintiffs and Cresson Point Properties, but we infer that fact from the context and from the parties' briefs.

2

Plaintiffs allege that the Goldman Defendants failed to repay any of the $85,000 they borrowed, though plaintiffs' exhibits suggest some payments were made.  (Id. ¶¶ 24-25; Doc. 9-3 Demand Letter dated January 2, 2014).²

Plaintiffs filed the instant lawsuit on June 10, 2015 (Doc. 1), and amended their complaint on October 5, 2015 (Doc. 9).  Plaintiffs allege six state law causes of action: Count I alleges breach of contract; Count II alleges fraud; Count III alleges fraudulent conversion; Count IV alleges unjust enrichment; Count V alleges unconscionability; and Count VI alleges unfair and deceptive trade practices under the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Pennsylvania Unfair Trade Practices and Consumer Protection Law (hereinafter "UTPCPL"), 73 PA. STAT. § 201-1 *et seq.*, and the Manufactured Home Community Rights Act (hereinafter "MHCRA"), 68 PA. STAT. § 398 *et seq.*³.  (Id.)

---

   ² Plaintiffs' demand letter to Defendant Helaine Goldman indicates that plaintiffs received five partial monthly payments, leaving an outstanding balance of $78,490 on the loan.

   ³ Plaintiffs' amended complaint titled both the fifth and sixth counts as "Count V."  We will refer to the sixth count as Count VI to avoid confusion.  In Count VI, plaintiffs invoke the FDCPA and UTPCPL by acronym only, without specifying the statutes by full name or citation to the United States Code or Pennsylvania Statutes.  We presume plaintiffs refer

Plaintiffs essentially assert that the Peffer Defendants conspired with the Goldman Defendants to defraud the plaintiffs by misrepresenting the Goldmans's ability to repay the $85,000 loan.  Plaintiffs allege that the Peffer Defendants compelled plaintiffs to sell the home to the Goldmans, knowing that the Goldmans would not be able to make the payments, then in some manner took possession of the home from the Goldmans when they defaulted.

The Peffer Defendants filed the instant motion to dismiss under Rule 12(b)(6) on October 26, 2015.  (Doc. 10).  While the parties briefed this motion, the court granted default judgment against Helaine Goldman on December 8, 2015.[4]  (Docs. 20, 21).  The Peffer Defendants' motion to dismiss has now been fully briefed and is ripe for determination.

---

to the federal Fair Debts Collections Practices Act and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, as cited above.

We also presume that plaintiffs' repeated reference to Pennsylvania's Mobile Home Park Rights Act asserts a cause of action under Pennsylvania's Manufactured Home Community Rights Act, which replaced the Mobile Home Park Rights Act in 2010–more than six (6) years ago.

[4] The court found Scott Goldman in default, having failed to file a responsive pleading, but denied plaintiff's motion for default judgment because plaintiff failed to establish a prima facie case against Scott Goldman.

**Jurisdiction**

The court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332.  Plaintiffs Dominic and Donna Cetani are citizens of New Jersey. (Am. Compl. ¶ 5).  Defendants Scott and Helaine Goldman are Citizens of New York.  (Id. ¶ 6).  Defendants Cole and Amber Peffer are citizens of Pennsylvania.  (Id. ¶ 7).  Defendant Cresson Point Properties, LLC, is a corporation organized under the laws of Pennsylvania with its principal place of business in Monroe County, Pennsylvania.  Additionally, the amount in controversy exceeds $75,000.  Because complete diversity of citizenship exists among the parties and the amount in controversy exceeds $75,000, the court has jurisdiction over the case.  See 28 U.S.C. § 1332 ("district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]").  As a federal court sitting in diversity, the substantive law of Pennsylvania applies to the instant case.  Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Legal Standard**

The Peffer Defendants filed their motion to dismiss the amended

complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion.  All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'"  Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)).  The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).[5]  Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation."  Id. at 234-35.  In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations

---

[5] Plaintiffs urge Conley v. Gibson, 355 U.S. 41 (1957) as the motion to dismiss standard.  Twombly supplanted Conley in 2007.  We no longer use Conley's "no set of facts" standard.

6

omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

**Discussion**

The Peffer Defendants move to dismiss all of plaintiffs' claims. Counts I and V, however, arise from a contract between plaintiffs and the Goldman Defendants. The Peffer Defendants were not parties to this contract and are thus not parties to these counts. Therefore, the Peffer Defendants motion to dismiss these counts will be denied.

The Peffer Defendants do challenge the remaining four counts: Count II, fraud; Count III, fraudulent conversion; Count V, unjust enrichment; and Count VI, unfair and deceptive trade practices under the FDCPA, the UTPCPL, and the MHCRA.  We address each challenged claim in turn.

**I. Fraud**

Count II alleges fraud against both the Goldman and Peffer Defendants. Under Pennsylvania law, common-law fraud, or "intentional misrepresentation," are:

> (1) A representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or

7

>recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and, (6) the resulting injury was proximately caused by the reliance.  Concerning the justifiable reliance element, whether reliance on a misrepresentation is justified depends on whether the recipient knew or should have known that the information supplied was false.  Also, a plaintiff must prove fraud by clear and convincing evidence.

<u>Weston v. Northampton Personal Care, Inc.</u>, 62 A.3d 947, 1019 (Pa. Super. Ct. 2013) (internal citations omitted).

Plaintiffs have clearly pled all elements of common-law fraud against the Goldman Defendants.  Plaintiffs allege that the Goldmans intentionally deceived them regarding their financial wherewithal to induce plaintiffs into loaning them the purchase price and selling them the home.  Plaintiffs allegedly relied upon that misrepresentation, and were, therefore, harmed when the Goldmans defaulted.  The Peffer Defendants argue that plaintiffs have failed to assert any facts that give rise to a similar claim against them.  We disagree.

Plaintiffs allege that "[t]he parties knowingly and intentionally agreed with each other to devise a scheme and artifice to defraud the Cetanis' [sic]."  (Am. Compl. ¶ 33).  This directly implicates the Peffer Defendants in the fraud claim.

Further, plaintiffs allege that "[in furtherance of this agreement and to effect its object, Defendant Amber Peffer is believed through [Cresson]

8

Point Properties, LLC, (CPP) to have paid the Goldmans' [sic] an unspecified amount for outstanding monies due to the trailer park and for the manufactured home." (Id.)

Setting aside the inartfulness of plaintiffs' pleadings, the complaint sets forth the factual allegation that the Peffer Defendants agreed with the Goldman Defendants to deceive the plaintiffs to obtain plaintiff's home. Not only does this satisfy the pleading requirements for a claim of fraud, it also states the claim in the language of civil conspiracy.

The Pennsylvania Supreme Court set forth the elements of civil conspiracy in Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979):

> It must be shown that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means.  Proof of malice, i.e., an intent to injure, is an essential part of a conspiracy cause of action; this unlawful intent must also be without justification.  Furthermore, a conspiracy is not actionable until some overt act is done in pursuance of the common purpose or design … and actual legal damage results.

Id. (internal quotations omitted).

Plaintiffs' amended complaint, at paragraph thirty-three, clearly articulates the factual requisites for a claim of civil conspiracy–indeed, this may be the only discernible, comprehensible factual allegation against the Peffer Defendants in plaintiffs' complaint.  Plaintiffs allege that the Peffer

9

Defendants: 1) agreed with the Goldman Defendants, 2) to deceive the plaintiffs as to the Goldmans' financial status, 3) to defraud the plaintiffs of their mobile home, 4) furthered by a payment from the Peffer Defendants to the Goldmans and the Goldmans entering the agreement of sale with the plaintiffs, 5) resulting in damages to plaintiff in the unpaid principal and interest on the house payments. We thus construe this allegation against the Peffer Defendants as a claim for civil conspiracy as well as for fraud, and decline to dismiss it.

**II. Fraudulent Conversion**

Second, the Peffer Defendants argue plaintiffs have failed to state a claim for conversion in Count III. Pennsylvania courts have defined conversion as "an act of willful interference with a chattel, done without lawful justification, by which any person entitled thereto is deprived of use and possession." Norriton E. Realty Corp. v. Central-Penn Nat'l Bank, 254 A.2d 634, 638 (Pa. 1969) (citation omitted). A conversion can be committed in one of four ways:

> (a) Acquiring possession of the goods, with an intent to assert a right to them which is in fact adverse to that of the owner. (b) Transferring the goods in a manner which deprives the owner of control. (c) Unreasonably withholding possession from one who has the right to it. (d) Seriously damaging or misusing the chattel in defiance of the owner's rights.

Id.

Plaintiffs claim that the Peffer Defendants conspired with the Goldmans to obtain plaintiffs' mobile home through fraud. Once the Goldmans purchased the home, plaintiffs claim the Goldman Defendants sold it to the Peffer Defendants who then listed it for sale. Plaintiffs have thus successfully pled that the defendants wilfully interfered with plaintiffs' chattel, without legal justification, depriving plaintiffs of their use and possession of their mobile home. See id. Further, these pleadings state a claim for conversion under two of the theories: (a) Acquiring possession of the goods, with an intent to assert a right to them which is in fact adverse to that of the owner, and (b) Transferring the goods in a manner which deprives the owner of control. Id. Accordingly, we will deny defendants' motion to dismiss Count III.

## III. Unjust Enrichment

Next, the Peffer Defendants challenge plaintiff's unjust enrichment claim in Count IV, arguing that Pennsylvania bars claims for unjust enrichment where an express contract exists.

"The doctrine of unjust enrichment contemplates that [a] person who has been unjustly enriched at the expense of another must make restitution to the other." Wilson Area Sch. Dist. v. Skepton, 895 A.2d 1250, 1254-55 (Pa. 2006) (internal quotations omitted). Nonetheless,

Pennsylvania courts have long held that the doctrine of unjust enrichment "is inapplicable when the relationship between parties is founded upon a written agreement or express contract, regardless of how 'harsh the provisions of such contracts may seem in the light of subsequent happenings.'" Id. (quoting Third Nat'l & Trust Co. of Scranton v. Lehigh Valley Coal Co., 44 A.2d 571, 574 (Pa. 1945)); see also Wingert et al. v. T. W. Phillips Gas & Oil Co., 157 A.2d 92, 94 (Pa. 1959) ("[The doctrine of unjust enrichment] applies only to situations where there is no legal contract.").

Pennsylvania courts have also recognized that this "bright-line rule" not only has "a distinguished common-law pedigree, but it also derives a great deal of justification from bedrock principles of contract law." Wilson Area Sch. Dist., 895 A.2d at 1254 (quoting Curley v. Allstate Ins. Co., 289 F. Supp. 2d 614, 620 (E.D. Pa. 2003)). "Moreover:

> as the Curley court noted,[this] bright-line rule also has deep roots in the classical liberal theory of contract. It embodies the principle that parties in contractual privity…are not entitled to the remedies available under a judicially-imposed quasi[-]contract [i.e., the parties are not entitled to restitution based upon the doctrine of unjust enrichment] because the terms of their agreement (express and implied) define their respective rights, duties, and expectations.

Id.

The lessor/lessee relationship between plaintiffs and the Peffer

12

Defendants existed because of an express, written contract. Plaintiff has specifically pled that it was this relationship that defendants allegedly exploited to defraud the plaintiffs. The contract between the parties constitutes the gravamen of this action, and thus, no claim for unjust enrichment may lie. Accordingly, the Peffer Defendants' motion to dismiss Count IV will be granted.

**IV. FDCPA, UTPCPL, and MHPRA Claims**

Finally, plaintiffs' Count VI alleges claims for "Unfair and Deceptive Trade Partices [sic]" under the FDCPA, 15 U.S.C. § 1692 *et seq*., the UTPCPL, 73 PA. STAT. § 201-1 *et seq*., and MHCRA, 68 PA. STAT. § 398 *et seq*. The Peffer defendants argue that plaintiffs have stated no cognizable claims under any of these statutes. After a careful review, we agree with the defendants.

Plaintiffs' brief opposing the Peffer Defendants' motion to dismiss these consumer protections claims cites no authority for the proposition that plaintiffs have asserted valid claims under the FDCPA, UTPCPL and MHCRA. Specifically, plaintiffs fail to cite any statutory provision substantiating actionable claims pursuant to these statutes. Plaintiffs fail to cite any caselaw supporting their assertions the Peffer Defendants violated their consumer protection rights. Finally, plaintiffs' amended

complaint fails to articulate any set of facts which, when viewed as true, raise a reasonable expectation that discovery will reveal evidence of plaintiffs' alleged consumer protection claims. Thus, the court will dismiss plaintiff's FDCPA, UTPCPL and MHCRA claims.

**Conclusion**

For the above-stated reasons, the court will grant in part and deny in part the Peffer Defendants' motion to dismiss. The court will dismiss plaintiff's unjust enrichment claims stated in Count IV and plaintiff's consumer protections claims asserted in Count VI. The motion will be denied in all other respects. Thus, remaining in this case are the following claims: Count I, breach of contract against the Goldman Defendants; Count II, fraud and civil conspiracy against all defendants; Count III, fraudulent conversion against all defendants; and Count V, unconscionability against the Goldman Defendants. An appropriate order follows.

**Date:   07/28/2016**                                   **s/ James M. Munley**
                                                        **JUDGE JAMES M. MUNLEY**
                                                        **United States District Court**